IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN L. BALDERSON, | ) | CASE NO. 1:11CV195 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHELE MILLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Brian L. Balderson ("Balderson"), filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 on January 24, 2011.  (Doc. 5).  Balderson challenges the

constitutionality of his conviction and sentence in *State v. Balderson*, 08CR611H and

2008CR692H (Richland County 2008).  Balderson pled *nolo contendere* to charges of forgery,

possessing criminal tools, theft, and attempted theft.  He was sentenced to a total of four years in

prison.

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.  For the following reasons, Balderson's petition

should be DENIED.  Further, Balderson's request for an evidentiary hearing, made in his

Traverse, is DENIED.

### I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).

The Ohio Fifth District Court of Appeals summarized the facts underlying Balderson's

conviction as follows:

**[\*P2]**  On June 27, 2008, the Loss Prevention Officer at the Meijer store in Ontario, Ohio contacted the Ontario Police Department. He informed Officer Hill that on June 26, 2008, an individual had attempted to cash a forged payroll check at the service desk. The store employee had attempted to cash the check in the amount of $698.76, which was made payable to Appellant. The business name of Shelly and Sands, Inc. was on the check and it was drawn from Chase Bank. Appellant swiped his ID card and printed his index finger on the bio-metrix finger print validator. However, the system indicated that the check was not valid. When the store employee informed Appellant that the check was not valid, Appellant fled the business and left the check behind.

**[\*P3]**  Officer Hill confirmed with Shelly and Sands, Inc. and Chase bank that the account did not exist. Appellant was captured on surveillance photos taken at the service desk of the Meijer store. The store employee provided a written statement. Officer Hill forwarded his report along with this information to the Richland County Prosecutor's Office to review for possible charges.

**[\*P4]**  On August 4, 2008, Appellant cashed a forged check at the Richland Bank. The check was counterfeit and contained the account information for the Richland County Jail Inmate Commissary Account. Appellant was captured on video and his ID information was recorded on the check.

**[\*P5]**  Thereafter, the Richland County Sheriff's Department began investigating Appellant's involvement in yet another offense. On August 14, 2008, an employee with Fast Cash Advance in Mansfield, Ohio advised Deputy Rich Eichinger that Mark B. Leedy and Raymond E. Ball were at her business attempting to cash a check from the Richland County Jail Inmate Commissary Fund. The Deputy contacted the Lieutenant with the Richland County Jail to confirm authenticity. Leedy and Ball stated they could not wait and took the check back from the employee. The incident was recorded on videotape and a copy of the check was submitted to the Richland County Sheriff's Office crime lab.

**[\*P6]**  Leedy and Ball were interviewed by the Richland County Sheriff's Department and gave taped statements. Ball stated that Billy Lambert approached him to make "easy money." He met with Paul R. Limpach and Appellant. Checks were made out to Ball and Leedy, which they cashed at various locations. Ball kept half of the money and the other half went back to Appellant and Limpach.

**[\*P7]**  On August 21, 2008, Appellant was arrested in Mansfield and his vehicle was searched. During the search, numerous counterfeit checks made payable to Appellant were located in the vehicle. Appellant cooperated and a search warrant was obtained for Limpach's residence. Evidence was seized that included a computer with check software and additional counterfeit checks. Because of

2

Appellant's and Limpach's actions, the Inmate Commissary Account was depleted of $13,000.00.

(Exhibit 18, Journal Entry and Opinion, pp. 1-3).[1]

## II.  Procedural Background

### A.  State Conviction

On September 12, 2008, a Richland County Grand Jury issued an indictment charging Balderson with the following counts pertaining to his alleged activities in August 2008 relating to the Richland County Jail Inmate Commissary Fund:  two counts of Possessing Criminal Tools (Ohio Rev. Code § 2923.24(A)); one count of Forgery (Ohio Rev. Code § 2913.31(A)(1)); and one count of Theft (Ohio Rev. Code § 2913.02(A)(1)).  (Doc. 10, Exhibit 1, Indictment – Case No. 08CR611H).  Balderson, through counsel, entered a plea of not guilty to the indictment and the case was set for trial.

The same Richland County Grand Jury issued a second indictment against Balderson on September 12, 2008, charging him with the following counts pertaining to his alleged activities at the Meijer store in Ontario, Ohio in June 2008: one count of Forgery (Ohio Rev. Code § 2913.31(A)(1)); and one count of Attempted Theft (Ohio Rev. Code §§ 2913.02(A)(1) and 2923.02(A)).  (Doc. 10, Exhibit 1, Indictment – Case No. 08CR692).  Balderson, through counsel, entered a plea of not guilty to the indictment and the case was set for trial.

On December 12, 2008, Balderson filed a motion to dismiss in each case based upon speedy trial grounds.  (Doc. 10, Exhibits 3 and 4).  On January 5, 2009, the State filed a response in opposition.  (Doc. 10, Exhibit 5).  On January 13, 2009, Balderson filed a reply memorandum in support of his motions to dismiss and, on that same day, the State filed an "augmented

---

[1] The Ohio Court of Appeals' opinion is reported at *State v. Balderson*, 2009 Ohio 6183, 2009 Ohio App. LEXIS 5189 (2009).  Balderson states in his Traverse that he does not object to facts set forth in the paragraphs of the Ohio Court of Appeals' opinion that are quoted above.  (Doc. 11, p. 2).

response" to Balderson's motions to dismiss.  (Doc. 10, Exhibits 6 and 7).  Following a hearing, the trial court denied Balderson's motions to dismiss.  (Doc. 10, Exhibit 8, Judgment Entry).

On February 11, 2009, Balderson changed his plea from not guilty to no contest as indicted in both cases and was found guilty as indicted in each case. (Doc. 10, Exhibits 9 and 10, Admissions of Guilt/Judgment Entries).  A sentencing hearing immediately followed and the trial court ordered Balderson to serve a term of one year of imprisonment for each conviction of possessing criminal tools, forgery and theft, to be served concurrently, for an aggregate total of one year in Case No. 2008CR611.  (Doc. 10, Exhibit 11, Sentencing Entry).  In addition, in Case No. 08CR692, Balderson was ordered to serve a term of one year of imprisonment for the conviction of forgery and six months incarceration for the conviction of attempted theft, which was credited as time served. (Doc. 10, Exhibit 12, Sentencing Entry).  The sentences in both cases were to be served consecutively, for an aggregate sentence of two years imprisonment. (Doc. 10, Exhibits 11 and 12).

Balderson was released from custody before he was to report to prison to serve his sentence and was subsequently arrested for several new offenses.  As a result, on March 2, 2009, Balderson appeared before the trial court for re-sentencing.  (Doc. 10, Exhibit 13 and 14, Re-Sentencing Entries).  The trial court modified Balderson's sentence to one year of imprisonment on each conviction in Case No. 08CR611, to be served consecutively to each other; and concurrent to a one year sentence in Case No. 08CR692, for an aggregate sentence of four years of imprisonment. (Doc. 11, Exhibits 13 and 14).

**B.      Direct Appeal**

On March 16, 2009, Balderson, through new counsel, timely appealed his convictions and sentences to the Fifth District Court of Appeals, Richland County, Ohio.  (Doc. 10, Exhibit 15,

Notice of Appeal).  Balderson filed his brief on June 30, 2009 and raised the following two

assignments of error:

1. The trial court erred in re-sentencing Appellant after a proper, valid and legal
   sentence had been imposed.

2. The trial court erred when it failed to dismiss the case on violation of the
   Appellant's speedy trial rights.

(Doc. 10, Exhibit 16, Brief).  On July 23, 2009, the State filed a brief in response. (Doc 10,

Exhibit 17, Brief).  On November 19, 2009, the Court of Appeals issued a decision affirming the

judgment of the trial court. (Doc. 10, Exhibit 18, Judgment Entry).

On January 4, 2010, Balderson, *pro se*, filed a timely notice of appeal to the Ohio

Supreme Court.  (Doc. 10, Exhibit 19, Notice of Appeal).  In his memorandum in support of

jurisdiction, Balderson set forth the following two propositions of law:

I. The trial court erred in re-sentencing Appellant after a proper, valid and legal
   sentence had been imposed.

II. The trial court erred when it failed to dismiss the case on violation of the
    Appellant's speedy trial rights.

(Doc. 10, Exhibit 20, Memorandum in Support of Jurisdiction).  On January 29, 2010, the State

filed a memorandum opposing jurisdiction. (Doc. 10, Exhibit 21).  On March 24, 2010, the Ohio

Supreme Court declined to exercise jurisdiction and dismissed the appeal as not involving any

substantial constitutional question. (Doc. 10, Exhibit 22, Entry).

**C.**     **Rule 26(B) Application to Reopen Appeal**

Meanwhile, on December 28, 2009, Balderson, *pro se*, filed an application for reopening

of direct appeal pursuant to Ohio Appellate Rule 26(B).  (Doc. 10, Exhibit 23, Application to

Reopen Appeal).  In his affidavit in support, Balderson alleged his appellate counsel was

ineffective due to counsel's following failures:

1. Appellant's counsel never submitted a record to this Court as to Appellant's time of incarceration for the purpose of resentencing.

2. Appellant's counsel refused to file ineffective assistance claim against trial counsel and also refused to submit relevant parts of the record that would assist Appellant in unraised issues and issue at hand.

3. Appellant's counsel did not submit a record sustaining his speedy trial claim to this Court.

(Doc. 10, Exhibit 23, Affidavit in Support).  On February 25, 2010, the Court of Appeals denied Balderson's Rule 26(B) application. (Doc. 10, Exhibit 24, Judgment Entry).

On March 12, 2010, Balderson, *pro se,* appealed the denial of his Rule 26(B) application to the Ohio Supreme Court.  (Doc. 10, Exhibit 25, Notice of Appeal).  In his memorandum in support of jurisdiction, Balderson set forth the following three propositions of law:

I. Appellant's appeal counsel never submitted a record to the appeals court as to Appellant's time of incarceration for the purpose of resentencing.

II. Appellant's counsel refused to file ineffective claim against trial counsel and also refused to submit relative parts of the record that would assist Appellant in unraised issues and issues at hand.

III. Appellant's counsel did not submit a record sustaining his speedy trial claim to this Court.

(Doc. 10, Exhibit 26, Memorandum in Support of Jurisdiction).  On May 5, 2010, the Ohio Supreme Court declined to exercise jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Doc. 10, Exhibit 27, Entry).

**D.     Motion for Re-sentencing**

On June 8, 2010, Balderson, *pro se,* filed a motion to re-sentence in both cases pursuant to Criminal Rule 32(C) and *State v. Baker* and *State v. Culgan*. (Doc. 10, Exhibit 28).  The State opposed the motion to vacate. (Doc. 10, Exhibit 29). On July 21, 2010, the Court overruled the motion. (Doc. 10, Exhibit 30, Judgment Entry).  Balderson did not appeal this decision.

**E.**     **Federal Habeas Corpus**

On January 24, 2011, Balderson, *pro se*, filed the instant petition for writ of habeas

corpus in the United States District Court for the Southern District of Ohio.  Doc. 5.  On January

26, 2011, the case was transferred to the United States District Court for the Northern District of

Ohio.[2]  (Doc. 2).  In his petition, Balderson asserted the following five grounds for relief:

> **Ground One**:  Trial court erred in resentencing Petitioner after a proper, valid
> and legal sentence had been imposed.
>
> **Ground Two**:  The trial court erred when it failed to dismiss the case on the
> violation of Petitioner's speedy trial rights.
>
> **Ground Three**:  Ineffective assistance of appellate counsel for failure to submit a
> record of the Petitioner's incarceration for the purpose of resentencing.
>
> **Ground Four**:  Ineffective assistance of appellate counsel for failure to raise
> ineffective assistance of trial counsel and also refused to submit relevant parts of
> the record that would assist petitioner in unraised issues at hand.
>
> **Ground Five:**  Petitioner's counsel did not submit a record sustaining his speedy
> trial claim to the appeals court.

(Doc. 5).  On June 24, 2011, Respondent filed an Answer/Return of Writ.  (Doc. 10).  On

July 21, 2011, Balderson filed his Traverse.  (Doc. 11).

### III.  Balderson's Non–Cognizable State Law Claims

Respondent contends that Balderson's first and second grounds for relief are based on

purported violations of Ohio law and are, consequently, not cognizable in this federal habeas

corpus case.  Balderson does not address this issue in his Traverse.

A federal court may review a state prisoner's habeas petition only on the grounds that the

challenged confinement violates the Constitution, laws or treaties of the United States.  28

U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a

---

[2] After the case was transferred to this district, the case was initially referred to United States Magistrate Judge
George J. Limbert for a report and recommendation (Doc. 8), but was subsequently reassigned to the undersigned
Magistrate Judge pursuant to General Order 2011-18.

perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted).  Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 388, 897 (6th Cir. 2008).

Balderson claims in his first ground for relief that the trial court improperly re-sentenced him after a valid sentence had already been imposed.  Doc. 1, p. 5.  Although Balderson does not cite to any federal case law in his Petition or in his Traverse, he does state that his claim is a "Double Jeopardy claim" on page 5a of his petition.  Doc. 1, p.5a.  Further, in the briefs that Balderson filed on direct review in state court, he clearly presented this claim as a federal constitutional claim.  It therefore appears that Balderson is attempting to argue that the sentence modification violated his rights under both Ohio law and the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  To the extent Balderson is asserting state law claims in his first ground for relief, such claims are not cognizable in federal habeas review and are therefore without merit.  *Estelle,* 502 U.S. at 67–68; *see Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000).  However, to the extent Balderson is asserting a claim based on a violation of the Double Jeopardy clause of the Fifth Amendment, this claim arises as a matter of pure federal law.  Construing the instant petition liberally, Balderson's first ground for relief is cognizable in the

8

present case to the extent that he asserts a violation of the Double Jeopardy Clause of the Fifth Amendment.

As to Balderson's second ground for relief, he generically claims that the trial court violated his speedy trial rights.  Doc. 1, p. 5 and 5a.  It is therefore unclear if Balderson is asserting that his rights were violated only under state law or if he is also asserting a violation of his right to a speedy trial provided by the Sixth and Fourteenth Amendments to the Constitution.  In his Traverse, however, Balderson elaborates on this claim and cites to *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  Doc. 11, p. 6.  This citation makes clear that Balderson is also asserting speedy trial claims under the Sixth and Fourteenth Amendments.  Thus, to the extent Balderson is asserting state law claims in his second ground for relief, such claims are again not cognizable in federal habeas review and are without merit.  To the extent that Balderson is asserting a violation of his right to a speedy trial provided by the Sixth and Fourteenth Amendments, his claim is cognizable on federal habeas review.

### IV.  Procedural Barriers to Review

Respondent next argues that Balderson has waived federal habeas review of his second ground for relief because he did not fairly presenting it to the Ohio courts as a federal constitutional claim.  Again, Balderson does not address this issue in his Traverse.

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381, 121 S.Ct. 1578 (2001).[3]

---

[3]  The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations is not at issue in this case.

A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

It is well settled that, in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *Fulcher*, 444 F.3d at 798; *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  The Sixth Circuit established the following four guidelines for determining whether a claim was presented in such a way as to alert the state courts to the claim's federal nature: (1) by relying on federal cases employing constitutional analysis; (2) by relying on state cases employing constitutional analysis in similar factual contexts; (3) by phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) by alleging facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

In situations in which a petitioner has failed to fairly present federal claims to the state courts and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted.  *Martin v. Mitchell,* 280 F.3d 594, 603 (6th Cir. 2002). While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).

As discussed above, Balderson's second ground for relief asserts a violation of his right to a speedy trial.  Balderson presented a similar claim to the Ohio courts on direct review but did not specifically frame the claim as a violation of his federal constitutional rights.  Rather, Balderson focused his argument on the calculation of time under Ohio's speedy trial statute, Ohio Rev. Code § 2945.71, and the application of the triple count provision of that statute, under which each day a defendant is held in jail in lieu of bail on a pending charge is counted as three days for purposes of the speedy trial time computation.[4]  Balderson argued that the triple count provision applied to his case because, even though he was being held in jail in lieu of bail on multiple charges, the charges stemmed from the same criminal conduct.  (Doc. 10, Exhibit 16, pp. 6-7).  In support of this argument, Balderson relied, in part, upon the Ohio Supreme Court case of *State v. Parker*, 113 Ohio St.3d 207, 863 N.E.2d 1032 (2007), in which the court considered when multiple charges should be considered collectively as a "pending charge" for purposes of the triple count provision.  Balderson fairly presented his federal speedy trial claim

---

[4] In Ohio, the triple count provision only applies when a defendant is being held in jail solely of the pending charge. *State v. Sanchez*, 110 Ohio St.3d 274, 277, 853 N.E.2d 283 (2006).  Thus, the triple-count provision does not apply when a defendant is being held in custody pursuant to other charges.  *Id.*

to the state courts by relying on *Parke,* which expressly considered the Sixth Amendment right to a speedy trial.

In *Parker*, the defendant was arrested in connection with the discovery of a methamphetamine lab.  His arrest resulted in three separate complaints charging the defendant with the illegal manufacture of drugs, possession of drugs, and carrying a concealed weapon. Separate bonds were set for the three charges, and the two felony charges were bound over to the court of common pleas.  Parker eventually posted a personal recognizance bond in the Court of Common Pleas but he remained jailed on the misdemeanor charge, which required cash bail or a surety bond.  The misdemeanor charge was subsequently dismissed.  Upon review, the *Parker* court concluded that the triple count provision applied to the three charges despite the fact that Parker was arraigned on three separate complaints.  *Id.* at 1036.  The court held that "when multiple charges arise from a criminal incident and share a common litigation history, pretrial incarceration on the multiple charges constitutes incarceration on the 'pending charge' for the purposes of the triple-count provision of the speedy-trial statute, R.C. 2945.71(E)."  *Id.* at syllabus.  In reaching this determination, the court recognized Ohio's lengthy history of Sixth Amendment jurisprudence and that Ohio's speedy trial statute was implemented to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment. *Id.* at 1034-35.

The facts in *Parker* are sufficiently similar to those in the case at bar to put the state courts on notice of Balderson's federal claim.  Balderson argued that all of the charges in his two cases stemmed from the same criminal incident and that the triple count provision should apply. Although the Ohio courts ultimately disagreed with Balderson's argument, he sufficiently raised his federal constitutional rights by relying on *Parker.  See McMeans,* 228 F.3d at 681.

Accordingly, Balderson fairly presented his speedy trial claim under the Sixth and Fourteenth Amendments to the state courts.

## V.  Review of the Merits

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Balderson's habeas petition because he filed it after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 181 L.Ed.2d 328, 2011 WL 5299458, at *1 (Nov. 7, 2011) (quoting *Harrington v. Richter*, 562 U.S. ___, ___ 131 S.Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  Balderson has not met his burden in this case.

## A.  Ground One

Balderson contends that the trial court improperly re-sentenced him after a valid sentence had already been imposed in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  (Doc. 5, p. 5).  This argument is without merit.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V; *Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).  The purpose of the double jeopardy clause is to protect against both "successive prosecutions for the same offense after acquittal or conviction

14

and against multiple criminal punishments for the same offense." *Id.* at 727-28.  However, the

Double Jeopardy Clause does not extend to noncapital sentencing proceedings. *Id.* at 724.

Double Jeopardy protections are inapplicable to sentencing proceedings because the

determinations at issue do not place a defendant in jeopardy for an "offense." *Id.* at 728.  In

addition, the Double Jeopardy Clause does not require that a sentence be given a degree of

finality that prevents its later increase.  *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980).

In particular, "the Double Jeopardy Clause 'does not provide the defendant with the right to

know at any specific moment in time what the exact limit of his punishment will turn out to be.'"

*Monge*, 524 U.S. 721 at 724 (quoting *DiFrancesco*, 449 U.S. at 137).

The Ohio Court of Appeals properly reviewed Balderson's claim under the principles set

forth in *Monge* and *DiFrancesco*:

> [*P23]  Appellant argues the trial court erred in re-sentencing Appellant on
> February 25, 2009 because it lacked authority to modify Appellant's sentence.
> We disagree.
>
> [*P24]  As a general rule, once a defendant has commenced serving his sentence,
> the trial court no longer has the authority to modify or amend that sentence,
> except as specifically provided by the General Assembly. *State v. Addison* (1987),
> 40 Ohio App.3d 7, 530 N.E.2d 1335; *State v. Garretson* (2000), 140 Ohio App.3d
> 554, 748 N.E.2d 560; *State v. Evans*, 161 Ohio App.3d 24, 829 N.E.2d 336, 2005
> Ohio 2337.  Execution of the sentence commences when the defendant is
> delivered to the institution where the sentence is to be served. *Garretson*, 140
> Ohio App.3d 554, 748 N.E.2d 560; *State v. Addison* (1987), 40 Ohio App.3d 7,
> 530 N.E.2d 1335. "Once a sentence has been executed, the trial court loses
> jurisdiction to amend or modify the sentence." *State v. Carr*, 167 Ohio App.3d
> 223, 2006 Ohio 3073, P 3, 854 N.E.2d 571, *citing State v. Garretson* (2000), 140
> Ohio App.3d 554, 748 N.E.2d 560.
>
> [*P25]  However, when execution of the sentence has not begun, the trial court
> possesses authority to modify or change the sentence. *Evans*, 161 Ohio App.3d
> 24, 2005 Ohio 2337, at P 15-17, 829 N.E.2d 336; *State v. Lambert*, 5th Dist. No.
> 03CA65, 2003 Ohio 6791, P14.  This is so because prior to execution, the
> sentence lacks the constitutional finality of a verdict of acquittal. *State v.
> Dawkins*, 8th Dist. No. 88022, 2007 Ohio 1006, P7, citing *State v. Meister* (1991),
> 76 Ohio App.3d 15, 17, 600 N.E.2d 1103; *Evans*, 161 Ohio App.3d 24, 2005 Ohio

2337, at P 11, 829 N.E.2d 336, citing *United States v. DiFrancesco* (1980), 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328; *State v. Vaughn* (1983), 10 Ohio App.3d 314, 10 Ohio B. 520, 462 N.E.2d 444.

(Doc. 10, Exhibit 18, Judgment Entry, ¶¶ 23-25).

The Ohio Court of Appeals then determined that Balderson's double jeopardy claim was without merit. In reaching this decision, the Ohio Court of Appeals found that that Balderson's re-sentencing was proper because execution of the sentence had not begun at the time his sentence was modified. Specifically, the court stated:

> **[*P26]** In the present case, the original sentencing entry was journalized on February 13, 2009. Appellant was ordered to report to the Richland County Jail for transportation to prison on February 16, 2009. Due to Appellant's activities after his release on February 11, 2009, Appellant did not report to prison on February 16, 2009 pursuant to the sentencing entry. Therefore, execution of Appellant's sentence for Case Nos. 2008-CR-611H and 2008-CR-692H had not begun.
>
> **[*P27]** Because execution of Appellant's sentence had not begun, the trial court possessed the authority to modify or change Appellant's sentence.
>
> **[*P28]** Appellant's first Assignment of Error is overruled.

(Doc. 10, Exhibit 18, Judgment Entry, ¶¶ 26-28).

The Ohio Court of Appeals applied the correct governing legal principle and reasonably determined that the trial court had the authority to modify or change Balderson's sentence because the execution of that sentence had not begun. Balderson does not argue that his re-sentencing was contrary to, or an unreasonable application of, federal law. Instead, Balderson appears to argue that, because he was in fact being held in jail on February 16, 2009, the execution of his sentence had commenced. Balderson fails to recognize, however, that he was being held in jail on February 16, 2009 on new criminal charges unrelated to the charges on which he was previously sentenced. The execution of his original sentence did not begin by virtue of the fact that he was confined in jail on unrelated charges. Put simply, the execution of

16

Balderson's sentence had not commenced and, as a result, the trial court was able to modify the sentence without violating Balderson's Double Jeopardy rights.  The Ohio Court of Appeals' decision was not contrary to or an unreasonable application of federal law and the decision is therefore entitled to deference.  Accordingly, Balderson has failed to satisfy his burden under the AEDPA and his first ground for relief is without merit.

**B.    Ground Two**

In his second ground for relief, Balderson argues that the trial court erroneously failed to dismiss his case because it was not disposed of in accordance with his right to a speedy trial. (Doc. 5, p. 5).  This claim is also without merit.

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972). The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require the Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which it should confine its efforts."  *Barker,* 407 U.S. at 523.  Instead, the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id.* at 530; *see also United States v. Marion*, 404 U.S. 307, 320-21, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.

*Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652).  While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n.1; *Maples*, 427 F.3d at 10260, those of a lesser duration are not per se excessive.  *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *see also United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive); *Wilcher v. Rose*, 85 F.3d 630 (6th Cir. 1996) (unpublished), 1996 U.S. App. LEXIS 17262, 1996 WL 262951, at *1 (ten-and-one-half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

The Sixth Circuit recently addressed Ohio's speedy trial statute[5] in the context of federal habeas review in *Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011).  The court held that AEDPA deference applies even where the Ohio Court of Appeals does not specifically explain that it is ruling on the merits of a Sixth Amendment speedy trial claim and, instead, bases its ruling on the

---

[5]  Ohio's speedy trial statute states that a "person against whom a charge of felony is pending . . . shall be brought to trial within two hundred seventy days after his arrest."  Ohio Rev. Code § 2945.71(C)(2).  The statute also provides that "[a] person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies or misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offenses charged . . . ."  Ohio Rev. Code. § 2945.71(D).  The triple-count provision of this statute provides that "each day which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  Ohio Rev. Code. § 2945.71(E).

Ohio Speedy Trial statute. *See id.* In reaching its decision, the Sixth Circuit reasoned that AEDPA does not require a state court strictly to apply the relevant federal standard as long as the test applied is not contrary to, or substantially different from, the relevant Supreme Court precedent. *Id.* at 330. The Sixth Circuit recognized that Ohio courts consider Ohio's Speedy Trial statute to be co-extensive with the Sixth Amendment. *Id.* Indeed, the Sixth Circuit stated that "Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270-day limit, is not 'substantially different' from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner." *Id.* "Thus, any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Id.* at 331. After determining that the state court adjudicated the merits of the Sixth Amendment claim, the Sixth Circuit then reviewed the state court's analysis to determine whether the court had unreasonably applied the *Barker* standard in that case. *See id.* at 332-38.

In the present case, the Ohio Court of Appeals determined that Balderson's speedy trial rights were not violated. The court stated:

> **[\*P29]** Appellant states in his second Assignment of Error that the trial court erred when it denied Appellant's motion to dismiss due to speedy trial violations. We disagree.

> **[\*P30]** Appellant argues the triple count provision of R.C. 2945.71(E) applied to his case because the charges in Case Nos. 2008-CR-611H and 2008-CR-692H could have been brought in a single indictment.

> **[\*P31]** On August 21, 2008, the Richland County Sheriff's Department arrested Appellant based upon its investigation into the use of forged checks to deplete the Inmate Commissary Account. The charges were presented by complaint and Appellant was bound over to the Richland County Jury by the Mansfield Municipal Court. The case was presented to the Richland County Grand Jury in

September 2008. Appellant was served with this indictment in Case No. 2008-CR-611H on September 20, 2008.

[*P32]  The Ontario Police Department gave its case regarding the counterfeit check presented at the Meijer store to the Richland County Prosecutors Office for review. The case was presented to the same Richland County Grand Jury in September 2008. Appellant was also served with the indictment in Case No. 2008-CR-692H on September 20, 2008.

[*P33]  Appellant states that the State had in its possession all of the pertinent facts that formed the basis for the original charge, as well as the additional charges brought by way of indictment in both cases. The State should have known that charges in the Ontario case and the Richland County forgery investigation arose from the same facts, therefore the charges could have been brought in a single indictment.

[*P34]  In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the state to bring a defendant who has not waived his rights to a speedy trial to trial within the time specified by the particular statute. R.C. 2945.71 *et seq.* applies to defendants generally.

* * *

[*P40]  A speedy-trial claim involves a mixed question of law and fact. *State v. Larkin*, Richland App. No. 2004-CA-103, 2005 Ohio 3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. With regard to the legal issues, however, we apply a *de novo* standard of review and thus freely review the trial court's application of the law to the facts. Id.

[*P41]  When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. In *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 57, 1996 Ohio 171, 661 N.E.2d 706, 709, the court reiterated its prior admonition "to strictly construe the speedy trial statutes against the state."

[*P42]  The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72.

[*P43]  "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." *State v. Riley*, 162 Ohio App.3d 730, 2005 Ohio 4337, 834 N.E.2d 887, P19.

[*P44]  Appellant was arrested on August 21, 2008. He filed a motion to dismiss on December 12, 2008, which the trial court denied on January 26, 2009.

Appellant remained in jail until he entered his change of plea on February 11, 2009. Appellant states that because the charges against him could have been brought in a single indictment, pursuant to the triple count provision of R.C. 2945.71(E), the number of days chargeable to the State is 339.

[*P45]  The question before us is whether the term "pending charge" should encompass possible additional charges stemming from separate incidents or transactions under investigation by the state for which an arrest is not made, so a defendant may receive the benefit of the triple count provision of R.C. 2945.71(E)?  We find that it does not.

[*P46]  Upon the record before us, we find the indictments were the result of two separate investigations by the Ontario Police Department and the Richland County Sheriff's Department into two separate events, one occurring in June 2008 and the other in August 2008. While these charges were brought before the same grand jury, albeit in separate hearings, we find the evidence in the Case No. 2008-CR-611H was based on a separate investigation from that of Case No. 2008-CR-692H.

[*P47]  Appellant was arrested and placed in jail on August 21, 2008 based on the Richland County forgery investigation. Appellant was served with his two separate indictments on September 20, 2008. The triple-count provision applied to Appellant's time in jail for the Richland County forgery investigation, so a total of 90 days elapsed for speedy trial purposes. From September 20, 2008 to December 12, 2008, 84 days are chargeable to the State, calculated at one for one, because Appellant was now being held pursuant to other charges, and not solely on the pending forgery charge. See, *State v. Sanchez*, 110 Ohio St.3d 274, 2006 Ohio 4478, 853 N.E.2d 283, P7. The speedy trial time was tolled pursuant to R.C. 2945.72 when Appellant filed his motion to dismiss on December 12, 2008 and the trial court ruled on the motion on January 26, 2009. 16 days elapsed, calculated one for one, before Appellant entered his plea on February 11, 2009. Accordingly, the State exhausted 190 days of the allowed 270 days.

[*P48]  The trial court correctly determined that Appellant's right to a speedy trial was not violated. Appellant's second Assignment of Error is overruled.

(Doc. 10, Exhibit 18, Journal Entry, ¶¶ 29-48).

Even though the Ohio Court of Appeals did not explain that it was ruling on the merits of a Sixth Amendment claim, its decision was not contrary to federal law because its analysis under Ohio's speedy trial statute was consistent with the Sixth Amendment.  *See Brown*, 656 F.3d at 330.  Further, the Ohio Court of Appeals' decision was not an unreasonable application of

federal law.  Balderson was arrested on August 21, 2008 and entered his plea of no contest to the

charges on February 11, 2009, 174 days or approximately five and a half months later.  However,

in determining the length of the delay, only the periods of delay attributable to the government or

court are counted.  See *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (citing

*Barker*, 407 U.S. at 529).  Here, Balderson contributed to the delay by filing a motion to dismiss

based on a violation of his speedy trial rights on December 12, 2008, which was denied on

January 26, 2009. (Doc 10, Exhibits 3, 4, 8).  Taking into account the delay attributable to

Balderson's motion, which was 45 days, the relevant period of delay for assessing his speedy

trial claim is 129 days, or approximately four months.  Such a delay is not presumptively

prejudicial.  *See United States v. Brown*, 498 F.3d. 523, 530 (6th Cir. 2007) (noting that a ten-

month delay "is likely right at the line to trigger an analysis of the remaining [*Barker*] factors");

*United States v. McPherson*, No. 2:08CR38, 2009 U.S. Dist. LEXIS 59851, 2009 WL 2146360,

at *3 (E.D. Tenn. July 14, 2009) (delay of nine months does not "approach" one year so as to

trigger presumption of prejudice); see also *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir.

2007) (finding that a nine month delay is not uncommonly long and is insufficient to warrant

further consideration of the remaining *Barker* factors); *United States v. Cope*, 312 F.3d 757, 778

(6th Cir. 2002) (delay of eight months and three weeks was not presumptively prejudicial);

*Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (delay of eight months is not presumptively

prejudicial).  Accordingly, Balderson's Sixth Amendment speedy trial claim fails.

Even assuming that the delay in this case is presumptively prejudicial, an examination of

the remaining *Barker* factors further demonstrates that no federal constitutional speedy trial

violation occurred in this case.  Although Balderson did assert his speedy trial right during the

state trial proceedings and this factor weighs in his favor, the balance of the *Barker* factors

22

weighs against him.  Most significantly, Balderson has not made any showing of how he was prejudiced by the delay.  Balderson has not alleged, much less demonstrated, any impairment to his defense, nor that any witness became unavailable or that any other evidence was lost because of the delay.  *See Barker*, 407 U.S. at 532.  Balderson has likewise failed to demonstrate prejudice on account of abnormal anxiety or oppressive pretrial incarceration.  *See id.*  Furthermore, the delay alleged by Balderson is generally insufficient to demonstrate prejudice.  *See United States v. Schreane*, 331 F.3d 548, 559 (6th Cir. 2003) (collecting cases and noting that "[w]hen prejudice has been found, the government's delay has typically been shockingly long") (citing *Doggett*, 505 U.S. at 657 (six years); *Brown*, 169 F.3d at 351 (five and one-half years); *United States v. Graham*, 128 F. 3d 372, 376 (6th Cir. 1997) (eight years)).

    In summary, the Ohio Court of Appeals' decision was neither contrary to nor an unreasonable application of federal law.  As such, this reasonable result of the state court decision is entitled to deference.  Thus, Balderson's second ground for relief is also meritless.

**C.      Grounds Three, Four, and Five**

    In his Third, Fourth, and Fifth grounds for relief, Balderson asserts that his appellate counsel provided ineffective assistance by failing to (1) submit a record of the Petitioner's incarceration for the purpose of re-sentencing, (2) raise an ineffective assistance of trial counsel claim on direct appeal and to submit relevant parts of the record that would assist Balderson "in unraised issues at hand," and (3) submit jail records in support of his speedy trial claim.  Doc. 5, pp. 6-6a.  Respondent asserts that these claims are all without merit.

    The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  A defendant has a Sixth Amendment right not just to counsel but to "reasonably

23

effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington,* 131 S.Ct. at 788.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

To establish that his attorney was constitutionally ineffective, Balderson must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.  Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.  To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different. *Id.* at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the ultimate judgment." *Smith v.*

24

*Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

Because the Ohio Court of Appeals reviewed Balderson's ineffective assistance of appellate counsel claim on the merits, a federal habeas court must give deference to the state court's adjudication of the merits.  *Perkins v. McKee*, 411 Fed. App'x. 822, 828 (6th Cir. 2011). The Supreme Court recently emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington,* 131 S. Ct. at 786-88.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).  Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).  Counsel's failure to raise an issue on appeal cannot be ineffective

assistance unless there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.  *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).  Further, counsel cannot be ineffective for a failure to raise an issue that lacks merit.  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003).  Relevant considerations in analyzing performance of appellate counsel include whether the omitted issues were significant and obvious; whether there was arguably contrary authority on the omitted issues; and whether the omitted issues were clearly stronger that those presented.  *Mapes*, 171 F.3d at 426-27.

Balderson raised his ineffective assistance of appellate counsel argument in a Rule 26(B) application for reopening his direct appeal.  In addressing these claims, the Ohio Court of Appeals correctly recognized that *Strickland* governs claims of ineffective assistance of appellate counsel and stated:

> The two-pronged analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct 2052, 2064, 80 L.Ed.2d 674, 693, is the appropriate standard to assess whether an application has raised a "genuine issue" as to the ineffectiveness of appellate counsel, in his request under App.R. 26(B)(5). *State v. Spivey* (1998), 84 Ohio St.3d 24, 25, 701 N.E.2d 696, 697; *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458.
>
> To show that ineffectiveness of counsel, an appellant must prove that his counsel were deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had those claims been presented on appeal. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Moreover, to justify reopening his appeal, an appellant "bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d at 25, 701.

(Doc. 10, Exhibit 24, Judgment Entry, p. 2).  The court then determined that Balderson failed to show deficient performance by appellate counsel or consequent prejudice.  The court found:

### I.

In Appellant's first Assignment of Error, he argues that appellate counsel was ineffective for failing to provide this Court with documentation of Appellant's jail records to support his first Assignment of Error on his direct appeal. In his direct appeal, Appellant argued that the trial court erred in modifying Appellant's

sentence before Appellant [sic] sentence had been executed. The trial court sentenced Appellant on February 13, 2009. Appellant was ordered to report to the Richland County Jail for transportation to prison on February 16, 2009. The trial court warned Appellant to stay away from a certain woman while he was released, or the trial court would resentence Appellant. During Appellant's release, he was arrested for criminal trespass because he was found in the woman's garage. The trial court resentenced Appellant to a harsher sentence.

In our decision, we found that when the execution of the sentence has not begun, the trial court possesses the authority to modify or change Appellant's sentence. Appellant argues that if his appellate counsel had provided this Court with his jail records, it would have shown that Appellant was arrested for criminal trespass on February 15, 2009 and released from the Richland County Jail on February 17, 2009.

We find that Appellant has not shown that his appellate counsel was deficient for failing to raise this issue, nor has he shown a reasonable probability of success had this Court been in possession of that record. As we stated in *State v. Balderson*, 5th Dist. No. 2009 CA 0043, 2009-Ohio-6183, ¶26: "Due to Appellant's activities after his release on February 11, 2009, Appellant did not report to prison on February 16, 2009 pursuant to the sentencing entry. Therefore, execution of Appellant's sentence for Case Nos. 2008-CR-611H and 2008-CR-692H had not begun." Appellant may have been in jail, but he was being held pursuant to a criminal charge unrelated to Case Nos. 2008-CR-611H AND 2008-CR-692H. Therefore, Appellant's sentence in the instant case had not begun, and the trial court possessed the authority to modify or change Appellant's sentence as stated in our Opinion.

## II.

Appellant argues in his second Assignment of Error that his appellate counsel failed to raise the ineffective assistance of his trial counsel as to his speedy trial arguments. Upon review of Appellant's arguments, we find that his appellate counsel appropriately and thoroughly raised the speedy trial issues as now argued by Appellant.

## III.

In his third Assignment of Error, Appellant argues that his appellate counsel was ineffective for his failure to include his jail time records in support of his speedy trial claims. Appellant also raises a separate criminal case, Case No. 09-CR-102H, as additional evidence he argues to support his contention that his speedy trial rights were violated.

Upon review of the record presented, we find that Appellant has failed to establish that his appellate counsel was deficient and that there was a reasonable probability of success on the speedy trial claim if his appellate counsel had furnished this Court with additional records. Appellant's argument for reopening merely restates the original argument on appeal that the two criminal cases should have been

27

brought in a single indictment so that the triple count provision of R.C.
2945.71(E) would be applicable.

(Doc. 10, Exhibit 24, Judgment Entry, pp. 3-5).

Balderson has failed to argue, much less establish, that the Ohio Court of Appeals'
decision was contrary to or an unreasonable application of the standard set forth in *Strickland*.
While the pleadings of *pro se* prisoners are liberally construed, *see Haines v. Kerner,* 404 U.S.
519, 595-96, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), even a liberal construction of Balderson's
allegations in his last three grounds for relief fails to indicate any alleged constitutional violation
due to the ineffective assistance of appellate counsel.  "Liberal construction does not require a
court to conjure allegations on a litigant's behalf[.]"  *Erwin v. Edwards,* 22 Fed. App'x. 579, 580
(6th Cir. 2001) (citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989)).  Upon review of the
record, the decision of the Ohio Court of Appeals was reasonable and is therefore entitled to
deference under AEDPA.  Accordingly, Balderson's Third, Fourth and Fifth grounds for relief
are without merit.

### VI.  Evidentiary Hearing

In his Traverse, Balderson asks for an evidentiary hearing.  (Doc. 11, p. 6).  However, in
*Cullen v. Pinholster*, ___U.S.___, 131 S.Ct. 1388, 1398–1401, 179 L.Ed.2d 557 (2011), the
United States Supreme Court recently held that the AEDPA requires federal courts to evaluate
the reasonableness of state court decisions on the basis of the "record in existence" that was
before the state court at the time of the state court decision.  Under *Pinholster*, federal courts
generally may not consider new evidence developed at an evidentiary hearing in federal court on
claims adjudicated on the merits in state court.  *Id.*

Because the Court has been able to resolve all of Balderson's claims by reference to the
state court record, it follows that, under *Pinholster*, Balderson is not entitled to an evidentiary

hearing on his claims.  Balderson's request for an evidentiary hearing is therefore DENIED.

## VII.  Conclusion and Recommendation

For all of the reasons stated above, the Magistrate Judge concludes that Balderson is not entitled to relief on any of his five grounds for relief.  Accordingly, the Court should DENY Balderson's petition for writ of habeas corpus and DISMISS this action with prejudice.  In addition, Balderson's request for an evidentiary hearing, made in his *Traverse*, is DENIED.


Dated: March 5, 2012

_____
Kathleen B. Burke
United States Magistrate Judge


## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).